E-FILED
Friday, 07 February, 2025  03:39:33 PM
Clerk, U.S. District Court, ILCD

**FILED**

FEB - 7 2025

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Plaintiff

PAUL T. GOTSCHALL, Pro Se

304 Gregory Normal Illinois 61761

(309) 287-2453

Welderu235@gmail.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF ILLINOIS

Now Comes

**PAUL T. GOTSCHALL,**

Plaintiff, Petitioner

vs.

Defendants.

CASE NO.: 25-1054

PLAINTIFF'S VERIFIED COMPLAINT

**EXELON/CONTELATION GENERATION COMPANY, L.L.C.,** Nuclear licensee, a Pennsylvania limited liability company and subsidiary of EXELON CORPORATION, a Domestic Pennsylvania corporation;

**MARRI MARCHIONDA-PALMER** and JOHN DOE PALMER, husband and wife; former Braidwood site Vice President and current Senior vice-president for Midwestern region of Generation Constellation Energy

**DOMINION ENERGY** Nuclear power licensee with the NRC Richmond Virginia Pulled PADS information and denied me employment dec 2024 Surry and January 2025 Millstone

**Energy Northwest** nuclear power Licensee 76 Power Plant Loop Richland Washington 99354 Columbia Generation Station

Or other JOHN DOES I-X; JANE DOES 1-X; BLACK CORPORATION I-X; and WHITE ASSOCIATIONS I-X; as may become relevant during testimonies/dispositions or other investigations.

1

With premeditation and intent to interfere with the petitioners continued efforts to identify work and stay employed in the nuclear industry in which he has worked for 20+ years. Constallation continues to prevent the petitioner from working.

As the petitioner has not failed a drug test, or inprocesseing testing nor posses a disqulifying legal conviction of any type. Constallation is now subverting the Federal Codes of Regulation system, and using the persoanl access data sytem to Blacklist the petiotner, while defying Department of Labor law, Department of Justice law and Equal Employment Opportunity Commission laws by infering to all United States nuclear licensees it will have disqulifying information at some time in the future.

This is a criminal act that is inclusive of all potential employers of the petitioner. This action by Constallation and its executives in all efforts to intentially harm the petitoner and his family (the petitioners children have had their educational oppertunities diminished due to this incidous, slander and directed interferance of the petitioners employment oppertunities. harrassment,stalking and directed employment interference while employed.

- This Tort of neglect and intentional harm, slander and direct employment interference, is caused with intent by Constellation Corporation. Specifically Marri Marchionda-Palmer, and Jose Behar, Andrew Anderson and other corporate officers and Employees in response to EEOC, NRC, DOL complaints. This retaliation and discrimination related to my formally reporting ongoing extramarital sexual relationships between my wife and members of the Exelon Senior leadership team at Fort Calhoun, Braidwood Station, Byron Station, Lasalle Generation, at training events, off site in local hotels near Braidwood NPP specifically the Braidwood Motel and Sun Motel, and within the Braidwood NPP plant offices and buildings, to include plant employees, contractors, maintence personnel and contract supervisors.
  While the harassment and directed employment interference began in 2013, with an inappropriate sexual relationship between my wife, and Mike Prospero an Exelon Plant Manager employed at Fort Calhoun Nebraska whom carried on a relationship with the petitioners wife, until Mike Prospero terminated petitioners' employment related to Mike Prospero's affair with the petitioners wife.
  As a result of my complaint about the affair and the resulting contract termination, Exelon Regional vice president (Lou Cortopassi) (retired) offered petitioner employment at Braidwood Generation plant in Braidwood Illinois. The petitioner's wife was able to procure her own employment at the plant where she began sexual relationships with Bill Spahr (Maintence Director), Greg Stopka (Outage manager) and Alex Tresplasious (operations manager).

2

At all times denying her infidelities with such effort as to demand we attend couples marital counseling in an effort of gaslight the petitioner and counselor into the belief she was not in multiple relationships during the marriage. An addiction she had during the entire marriage and denied for the entirety of the marriage and continues to deny as any truly addicted person would.

These improper relationships then continued, and employment harassment of the petitioner daily from 2016 until termination of the petitioner's employment in Sept 2018.and then blacklisted in the PADS system until October 2020 a timeframe of two full years.

Constellation now continues a PADS entry from August 2024 with every effort to prohibit the petitioner from working.

Its notable to point out here that no security department officer or security executive has been willing to place unfactual entries into derogatory information into the Personal Access Data System PADS system of the petitioner.

As this would be a clear indication of disqualifying behavior or action of the petitioner which does not exist and would be required to prove. This would also provide a clear false statement on the part of a plant security official who are not willing to position themselves in that jeopardy of disseminating false information.

Post employment interference and harassment, Constellation, has continued to track and locate the petitioner at Plant Vogtle (Southern Company) Los Almos National Laboratory and now direct Blacklisting and prospected employment interference with NRC licensees, Northwest Energy (Plant Columbia) and Dominion Energy (Plants Surry and Millstone) including other nuclear licensees that have intended to interview and offer employment and did not, due to the (ADMIN INFO) entry in the PADS system by Constellation. (NRC requirements for Potentially Disqualifying Fitnessfor-Duty in attached page 25)

After my formal report of harassment to the site vice president MARRI MARCHIONDA-PALMER harassment continued and increased (see counts 1-13 listed below) when Marri terminated petitioners' employment with Exelon/Constellation. In addition, Petitioner also reported this harassment to direct supervisor Chris Bedford (retired)the Exelon Ethics and Compliance / Employee Concerns / and Human Resources. No interviews no resolution and mitigation came forth from those reports.

3

Petitioner has been unemployed and at all times had my efforts to become reemployed interfered with, and or harrassed during my short durations of employment. Since 2018

Petitioners is currently unemployed, damages include denial and interference to become employed of past, current and future employment. education advantages of my three children have been lost, loss of real property and health damage due to lack of medical insurance coverage, of stress no retirement funding due to the long term of employment interference.

After petitioners' termination from Braidwood in 2018 Exelon put derogatory information (Admin Data) into the "PADS" a security data based utilized by all nuclear plants in the US and some abroad this "Admin Data" denied my employment nationwide.2018-2020. When petitioner was able to identify Constellation had placed derogatory information the directed interference of employment comments into the PADS system, petitioner then notified Marri Marchionda-Palmer the site VP that terminated my employment, she then removed the unfounded unlawful "ADMIN INFO" PADS Personnel Access Data System entry.

After Tammara Domeyer (Exelon Corporate council) insisted that petitioner should be banned from working in nuclear power on her assertion. (no longer with the company) With no offer to remunerate the petitioner for the two years of employment interference.

Respondent was at all times required to notify the petitioner of the derogatory information placement in the PADS system. In the clear and deceptive efforts to keep the petitioner from working, in the security director exit interview at Braidwood, 2018 he directly stated there was no issue with me being reemployed in the nuclear power industry, as no disqualifying information existed.

Braidwood never notified the petitioner when they then placed "ADMIN INFO" into the PADS system allowing the petitioner to believe for a two year period he was all times applying for employment fairly and equally with other applicants.

Only when the petitioner was offered employment at Energy Northwest in 2020 and subsequently denied unescorted plant access did the deception that Exelon had been blacklisting petitioner the entire duration of 2018-2020 was revealed.

As a point of reference Greg Stopka was in fact charged with DUI in 2007, however he was not terminated blacklisted or harrassed. And he was allowed to retain his position/employment and seniority and retire with the company.

However, when petitioner was accused of off-site out of work hour inappropriate conduct, he was immediately terminated and blacklisted and deceived.

Constellation continues to slander, Blacklist and interfere with the prospective employment of the petitioner to all nuclear licensee's nationally and internationally. Now as if Constellation has not damaged petitioner sufficiently, to their satisfaction, corporate leadership is now currently Blacklisting the petitioner in the personal access data system (PADS) again and currently asserts directly thru Jose Baher (Constellation Counsel) Constellation "will do whatever it takes to make sure petitioner will not be allowed to work in the Nuclear Energy Business" including statements about my age as to that "won't be long". A direct communication from Jose Behar constellation corporate attorney. 2024

Energy Norwest and Dominion Energy have participated in the Blacklisting as asserted by Constellation formally denying offers of employment, and a security clearance in August of 2024 and December of 2024 respectively. Denying an unescorted security clearance that petitioner has maintained since 1999.

While Marri Marchionda Palmer was not a participant of the daily harassment, she had knowledge of the actions and harassments of her directors, managers, supervisors, and employees (due to the proximity of her office in relation to that of Bill Spahr, as my wife spent most of her work day form 2016-2018 in Bill Spahr's office part of the fourth floor suite of directors offices, and using the amenities of the suites of the offices on the fourth floor as if they were she was entitled to them.

As Marri Marchionda – Palmer (Site VP office is in his group of offices Marri would have knowledge of the petitioners wife and her relationship to Bill Spahr)

Marri now admits she was misled by the plaintiff's wife's claims of spousal abuse, however at the time Marri knowingly allowed the daily abuse of the petitioner and approved the termination of the plaintiff by Mary Meisenhiemer.

Mary Meisenhiemer, the Braidwood Director of Human Resources, whom due to the proximity of her office, across the hall from Bill Spahr's Office (and included in the suite of offices on the fourth floor) was well aware of the daily interaction of the plaintiffs wife and the Director of Maintence. Bill Sphar, who for the two years 2016-2018 of plaintiffs employment it was Mary Meisenheimer's duty to report improper relationships and behaviors. Mary should have investigated the claims of the plaintiff's wife and if true, terminated the plaintiff on those claims.

However, due to the FACT the claims were never true, other allegations and violations of the code of business conduct were fabricated in which to validate the relationships and harassments of directors, managers and supervisors toward the plaintiff. The plaintiff was subjected to the violations of the code of business conduct, federal state and NRC laws of harassment on a daily basis however no one was ever terminated or

5

faced adverse employment actions for harassment. (see list of counts and specific violations below)

*Reporting violations to the DOL and NRC and Illinois Department of Labor requirements the Petitioner filed Allegations EEOC 440-2020-04154/440-2025-02804/437-2025-00539 as related to the Blacklisting /Retaliation / Slander violations of this claim include* Former employer routing derogatory information to new potential employers *through the nuclear security access system and*

*EEOC 440-2019-176 as related to the Harassment / Termination / Retaliation violations.*

This Allegation of violations against defendants, jointly and individually, seeks relief for same in this petition for relief and Request for Jury Trial states as follows: (Counts 1-12 are NRC Code definitions) 13 and 14 relate to Department of Labor violations.

- **COUNT I     Blacklisting and Denial of past, Current and Future Employment** *slandered/ defamed Sept 2018-Sept 2020 July 2024 - current*
- **Count II     *Employment termination or layoff*** Terminated form Braidwood Sept 2018
- **Count III     *Performance appraisal downgrades*** *Several times during the employment timer frame from 2016-2018 Request for employment records pending*
- **Count IV     Demotion or arbitrary downgrade of a position Moved** *from valve specialist to heat exchanger component specialist to keep me on night shift so Bill Spahr and my wife can play boyfriend girlfriend during outages four outages from 2016-2018 I was forced to work nightshift all four outages.*
- **Count V     Transfer to a position that is recognized to have a lesser status or be less desirable (e.g., from a supervisory to a non-supervisory position, less desirable work schedule, less desirable work location (isolated))** *Moved from valve specialist to heat exchanger component specialist. Downgraded from safety related work to non safety related work to avoid violation of NRC harassment codes of regulation.*
- **Count VI     Denial of overtime or promotion, or reassignment affecting the prospects for promotion** *Denied a request to transfer welding subject matter expert see list of accomplishments while working at Braidwood attached) I had resolved several high value welding issues prior to this request.*
- **Count VII     Constructive discipline, including verbal or written counseling** *repetitively denied comparative bonuses even though meeting all the requirements of the position. Completed engineering qualification program in less than one year with a composite test of 90%*

6

- **Count VIII** **Denial of training** *denied valve and heat exchanger specific training when requested. While it was directly part of my assigned tasks*
- **Count IX** **Failure to hire or rehire** *petitioner has responded to many resume requests within the Constellation organization. Both contractor and in house all have been denied.*
- **Count X** **Intimidation/harassment; hostile work environment** *as asserted in this petition.*
- **Count XI** **Failure to receive routine annual pay increase or bonuses, other reduction in pay, hours, or benefits • Exclusion from activities to which co-workers are invited** *several times during the 2016 -2020 employment period.*
- **Count XII** **Disparate treatment** *daily and convinced they were entitled to.*
- **Count XIII** **Intentional Infliction of Emotional Stress** *as asserted in this petition.*

## PARTIES

1. Plaintiff, PAUL T Gotschall

2. Defendant, CONSTELLATION GENERATION COMPANY, L.L.C. (hereinafter "EXELON GENERATION"), is and was at all relevant times to this action a Pennsylvania limited liability company organized and authorized to transact business and doing business in the State of Illinois and a subsidiary of EXELON/Constellation CORPORATION. Respondent, EXELON/Constellation CORPORATION (hereinafter "EXELON"), is and was at all times relevant to this action a Pennsylvania corporation and principal of EXELON/Constellation GENERATION an authorized Nuclear Power Licensee by the United States Nuclear Regulatory Commission to do operate and maintain nuclear power generating plants under all of the jurisdictional requirements of the Atomic Energy Act of 1954 and Energy Reorganization act of 1974 and doing business in the State of Illinois as licensed and regulated by the Illinois Emergency Management Agency Exelon corporate headquarters located at 10 S. Dearborn St. 48th Floor Chicago Illinois located within Cook County, Illinois.

3.Defendant s, MARRI MARCHIONDA-PALMER and JOHN DOE PALMER (hereinafter "MARCHIONDA-PALMER") are husband and wife and at all times relevant to this action were residents of the United States.

4. Energy Northwest an authorized Nuclear Power Licensee by the United States Nuclear Regulatory Commission to do operate and maintain nuclear power generating plant under all the jurisdictional requirements of the Atomic Energy Act of 1954 and Energy Reorganization act of 1974 and doing business in the State of Washington

7

5. Dominion Energy Corporation an authorized Nuclear Power Licensee by the United States Nuclear Regulatory Commission to do operate and maintain nuclear power generating plants under all the jurisdictional requirements of the Atomic Energy Act of 1954 and Energy Reorganization act of 1974 and doing business in the State of Virginia

6. Plaintiff is not in possession of the true names of the JANE DOES named herein and once known he will seek leave to amend the Complaint to include their actual names.

7. Plaintiff is not in possession but believes there might be other individual Defendants or entities who acted together or collectively in the actions alleged and as such have designated them as JOHN DOES I-X, BLACK CORPORATIONS I-X and WHITE

8. Plaintiff states that at all relevant times herein, the individual Defendants were employed for EXELON GENERATION and/or EXELON and are liable for the unlawful acts having aided and abetted them in the unlawful conduct as stated IN COUNTS 1-thru 14. See Below

9. Plaintiff states that at all relevant times herein, each Defendants intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct as outlined in counts 1 thru 13


JURISDICTION.

1.This Court has authority pursuant to 28 U.S.C. §§1332 as the amount sought by Plaintiff exceeds $75,000.00 as a result of breach of employment contract and employment law by Respondents actions. Slander / Employment interference / federal and state blacklisting laws as applicable in Illinois, Virgina and Washington state /federal and state stalking, blacklisting, slander and codes of federal regulation as deemed appropriate.

2. Plaintiff is now homeless and unemployed. As a result of the Blacklisting, stalking and employment interference, tracking of my car and cell phone location.

3. All of the Defendants either conduct business or reside within the United States.

4. Many of the issues in this case involve federal licenses and federal statutes. federal regulations and federal punishments. To include Department of Labor Violations, EEOC law, Department of Justice law, and Federal Codes of Regulation. (FCR)

5. Plaintiff was employed by as an Exelon an employee of Respondent EXELON/Constellation GENERATION COMPANY L.L.C., a subsidiary of now Constellation /EXELON CORPORATION doing business in the United States. And thus under the Employment protections of DOL. IDOL, DOJ, EEOC and NRC subsequently Dominion, Energy Northwest also fall under these requirements.

8

Constellation and its managers and employees are also responsible to Constellation Corporate policies, Code of business conduct which Constellation like to present as a federal code of regulation however in actuality is an <u>employee conduct policy</u> that Constellation uses to the benefit of its own will and protection of senior leadership. However, it is reviewed and approved by the NRC and required as such to be adhered to for the purposes of employee discipline and observed behaviors.

Constellation disregards nuclear regulatory standards of harassment as to Department of Labor standards, sexual harassment, and employment behaviors, sexual, discrimination and harassment policies. Nuclear Regulatory Commission Policies as required by their license from the NRC to possess and operate using nuclear fissionable materials.

6. It should be prudent for the federal court system to preside and have authority over these Federal Codes of regulation as pertain to nuclear power licensees and related Employment law of the EEOC, NLRB, NRC, DOJ and adverse action allegations / violations of civil and criminal definition as outlined in this case. As the petitioner was and is currently subjugated and subjected to nearly daily harassment by members of the Senior Leadership Management Team and employees of the plant at Braidwood Nuclear Power Plant (BNPP) Cantera (Constellation nuclear district office) . And other employees and contractors conduct business at BNPP. Subsequently blacklisted by all nuclear licenses.

## FACTS

1. Plaintiff and Defendants EXELON GENERATION and EXELON CORPORATION entered into an employment agreement in 2016 when Plaintiff was hired as a nuclear mechanical component maintence expert and required to complete all engineering instruction and testing as part of the Exelon employment normally a two year process which petiitioner completed in one year with a 90% test score average at the Braidwood Nuclear Generating Station in Braceville, Illinois.

2. Petitioners spouse, CHARITY FAITH GOTSCHALL, was also hired in 2016 by defendants as an outage scheduler at the Braidwood Nuclear Generating Station in Braceville, Illinois.

3.Repondant, MARCHIONA-PALMER, is employed by EXELON as Vice President of the Braidwood Nuclear Generating Station and Manger of the Senior Leadership Team ("SLT"). Now as senior VP of Operations Constellation oversight of all nuclear plants in the state of Illinois

4. Respondent William SPAHR is employed by EXELON as a Maintenance Director at the Braidwood Nuclear Generating Station and a member of the SLT and director of the maintenance department Plaintiff worked for at Braidwood. Now Senior director of maintenance of the Constellation Midwest region.

6. From 2016 to the time of Plaintiff's termination in September 2018 CHARITY GOTSCHALL participated in extramarital relations with SPAHR, STOPKA, Tresplasious and other Exelon Employees, and contractors without Plaintiff's knowledge.

7. During the same time, CHARITY GOTSCHALL made untrue and slanderous statements to Spahr, Stopka, Tresplasious and others regarding the Plaintiff, her husband in effort to justify her relationships with them.

8. Spahr concealed his personal relationship of over two years with CHARITY GOTSCHALL and provided bias and untrue performance evaluations to the SLT in planned Pre Adverse Action (counts 2 and 3) to have Plaintiff terminated. Spahr then confronted the petitioner in late June 2018 telling the petitioner he needed to quit and find new employment, as Spahr, and petitioner's wife intended to elevate their relationship, and petitioners employment at the same location interfered with their plans. Spahr then also revealed to the petitioner Stopka's relationship with the petitioner's wife indicating Stopka's relationship had existed as long as Spahr's. (fair to note his words not hers as she was at all times denying her relationship with Bill Spahr) Including at counseling sessions with Dr. Phillip Foster Bloomington Illinois.

While at the same time formally awarding the plaintiff acknowledgements and awards for recognition of the resolution of long-standing plant maintenance issues, plant maintenance issues that Engineering, operations, maintenance and corporate resources had not been able to correct. Bill Spahr continued harassment and disparaging employment practices towards the petitioner. A list of some of these accomplishments and acknowledgments are attached to this complaint. Exelon has admitted in court responses petitioner was an excellent employee.

9. Ronald Stopka always concealed his relationship with the wife of the petitioner. Stopka was required to report his intimate relationship with a direct report to his manager which he did soon after petitioner was terminated. Though not in the petitioners chain of management he provided bias and slanderous statements about plaintiff to SLT and others, which contributed to deficient performance entries. Ronald and the plaintiff's former wife married 6 months post dissolution of marriage from the petitioner.

10. As the Plaintiff gained direct knowledge of wife's CHARITY GOTSCHALL's extramarital affairs with Stopka, Spahr, Tresplasious, Petitioner reported it to his direct report supervisor Chris Bedford (retired) reported it to Braidwood Human Resources, MARCHIONDA-PALMER failed to investigate and violated EXELON'S "Reporting Unsafe or Improper Business Conduct"

10

policy LE-AC-204. While never investigating, or punishing the named directors, managers and employees nor did she reduce, eliminate, or stop the harassment.

11. On September 26, 2018, EXELON terminated petitioners' employment stating he violated EXELON GENERATION's policies and Code of Business Conduct. (available online).

12. On December 19, 2018, the Illinois Department of Employment Security approved Plaintiff's application for unemployment benefits with its Determination notice which stated EXELON failed to provide details to show that Plaintiff's conduct was neither willful nor deliberate.

13. Discovery of the PADS entry, although required by law in the codes of federal regulation that derogatory information be revealed by the posting licensee, was not identified to the petitioner in either 2018 or 2024. Until Energy Northwest denied an offer of employment based on the "ADMIN INFO" entry onto the PADS report. attached to this petition.

14. Exelon/Constellation has asserted observations made by the petitioner's spouse as truth of the matter for behavior observations, in which to condone their acts of harassment and employment interference, including termination. However, as we can see Charity has her own agenda, as do the senior leadership respondents of this petition. The behavior of addicted persons outlined in this petition are reflective of addicted persons and their enablers, especially those with sexual satisfaction, addiction and professional careers to protect.

*As a violation of Paragraph A of the 10 CFR 50.5 (CFR / Code of Federal Regulations) of (discrimination, Retaliation, Termination of employment, Sexual harassment) to an Employee engaged in Protective Activities OR NOT of directed Nuclear Employee Protections 10 CFR 50.7 and The Nuclear Regulatory Commission Policy and Procedure for Preventing and Eliminating Harassing Conduct in the Workplace (Attached). And as Exelon Corporation is a Nuclear Regulatory Commission Licensee. Pursuant to the jurisdiction of 10 CFR 50.7, 10 CFR 50.5, 10 CFR 50.110 and 10 CFR 50.111 the violation of these codes of Federal Regulations provides for the Revocation and or Suspension of a Nuclear License and Imposition of a civil penalty on the licensee, applicant, or a contractor or subcontractor of the licensee. In addition, all references within this petition the NRC in each CFR considers ALL employees of each nuclear licensee as a Licensee and as such fall within the regulations and punishments both criminal and civil as defined by each Code of Federal Regulation (CFR). Inclusive in this petition are violations of 10 CFR 5.2j Chilled Work Environment Allegations these Safety Conscious Work Environment Violations (SCWE) are no less serious in the eyes of the NRC and DOL.*

*In addition the court may find the direction of issuing a (CEL) Chilling Effect Letter may be part of its finding. and within its ability (SEE NRC* ALLEGATION GUIDANCE MEMORANDUM 2012-001, "NRC CHILLING EFFECT LETTERS" Safety Conscious Work Environment SCWE is considered paramount in the NRC several online documents are available for review and consideration in regard to this petition.

As Exelon by it's actions and the actions of its Officers violated and disregarded these codes of enforcement as well as its own Code of Business Conduct. During the employment and termination of the Petitioner. The <u>continuous</u> Adverse actions of Exelon Management and Employees are defined as, An action that may adversely impact the compensation, terms, conditions, or privileges of employment including, but not limited to, a failure to receive a routine annual pay increase or bonus, demotion or arbitrary downgrade of a position, transfer to a position that is recognized to have a lesser status or be less desirable (e.g., from a supervisory to a nonsupervisory position), failure to promote, overall performance appraisal downgrade, verbal or written counseling, or other forms of constructive discipline, or termination..

*Additional Protective Employment Codes Violated, and deemed irrelevant by the Exelon/ Constellation Senior leadership team members (SLT)*

*Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-16 (Title VII); the Age Discrimination in Employment Act of 1967, 29 U.S.C. 633a (ADEA); the Rehabilitation Act of 1973, as amended, 29 U.S.C. 791; Executive Order (E.O.) 11478, as amended by Executive Order 13087, May 28, 1998; Equal Employment Opportunity Commission's (EEOC) Model EEO Programs Must Have An Effective Anti-Harassment Program (2005); EEOC's Manual Directive 715 (2003); EEOC's Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors (1999); Faragher v. Boca Raton, 514 U.S. 775 (1998); and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998.) III.*

**Below is an excerpt from NRC Code of Regulations governing harassment in the workplace.**

**(NRC) Nuclear Regulatory Commission Policy and Procedure for Preventing and Eliminating Harassing Conduct in the Workplace (Copy Attached to this Petition) as Well as Copy of the Exelon Code of Business Conduct for Terms of Employment reference.**

*The Definition of Harassing Conduct For purposes of this Policy, harassing conduct is defined as any unwelcome verbal, -2- visual, physical or other conduct based on race, color, religion, gender (whether or not of a sexual nature), national origin, age, disability, sexual orientation or retaliation based on opposition to discrimination or participation in the EEO complaint process under either of the following conditions: A. The behavior reasonably can be considered to adversely affect the work environment, or B. An employment decision affecting the employee is based upon the employee's acceptance or rejection of such conduct. Examples of unwelcome prohibited conduct under part A of the definition include, but are not limited to: offensive remarks or comments; ridicule; offensive and derogatory words, phrases, epithets, or jokes; suggestive comments and unwelcome requests for sexual favors; exposure to offensive photographs, explicit drawings, cartoons, e-mails, or internet transmissions; touching; pinching; grabbing; gesturing; or stalking. Examples of unwelcome prohibited conduct under Part B of the definition includes, but are not limited to: promoting or not promoting an employee; or taking or not taking a personnel action affecting the employee's conditions of employment based on the employee accepting a date or sexual favor.*

All of which were violated during the petitioner's tenure at BNNP. As set forth by the NRC a violation of any one of the counts listed above would be a violation of Exelon's License to own and operate a Nuclear Power Plant under the regulations of Atomic Energy Act of 1954 and the Energy Reorganization act of 1974 all of which require Licensee's to adhere to all federal laws of the DOL, DOJ and EEOC and any additional regulations or confirmatory letters as issued by the NRC the violation of these codes of Federal Regulations provides for the Revocation and or Suspension of a Nuclear License and Imposition of a civil penalty on the licensee or employees. all in addition to compliance with Illinois Nuclear Regulation Authorities whom adhere to IDOL Illinois Department of Labor Laws..

*Additional consideration by the court may be given to the physical and close business relations proximity to the NRC Region 3 offices of Lisle Illinois that are mere yards from the Exelon Midwest Regional offices at Cantera Illinois. This rather cozy relationship is well known by Exelon upper management and very well may have contributed to the lack of regulatory oversight and response to the petitioners allegations by the NRC in this matter. As well as contributed to the lack of compliance by Exelon Management in their response to NRC regulations.*

13

It should also be noted that the MRO Medical review officer is required by law to hold a Doctor of Medicine Degree and associated license from the state the MRO identified in related responses from Exelon does not hold such a degree.

It has been directly stated to the petitioner that Constellation no longer believes the constraints of FCR part 10 -26.189 apply to them and they can arbitrarily determine a nuclear worker unfit for duty, at any time at their own discretion without adherence to employment laws or codes or federal regulation or follow the requirements of 10 FCR 26-189. A statement that they are fulfilling at with this harassment.

Although 10 FCR 26.189 is at all items relevant to this case as it involves all fitness for duty determinations and Constellation is willingly and openly subverting the application of the code in this case, toward this FORMER employee, it is applicable to point out to the court FCR part 10 26.825 outlines the application of criminal penalties relevant to this case

(a) Section 223 of the Atomic Energy Act of 1954, as amended, provides for criminal sanctions for willful violation of, attempted violation of, or conspiracy to violate, any regulation issued under sections 161b, 161i, or 161o of the Act. For the purposes of section 223, all of the regulations in Part 26 are issued under one or more of sections 161b, 161i, or 161o, except for the sections listed in paragraph (b) of this section.

The respondents had a clear employment agreement with the plaintiff as represented in the EXELON Code of Business Conduct and related employment and management codes, expectations, requirements of personal and professional conduct. In parallel the Petitioner had an expectation of professionalism and conduct of relationships to be upheld by Exelon Management. As Braidwood management failed to require its Directors, Managers, and supervisors to adhere to the company standards and regulations, including NRC and DOL, DOJ behaviors Petitioner considers this lack of adherence to be intentional damages inflicted to the respondent by Constellation and its officers.

(SLANDER)

Plaintiff had an exemplary reputation with excellent performance reports throughout the nuclear energy community and Defendants' slanderous statements have caused him future employment and economic loss. Defendants Stopka, Spahr and Tresplasious repetitive slanderous statements about Plaintiff resulted in negative performance evaluations that in part contributed to the plaintiffs unjustified termination and damaged reputation.

WHEREFORE, Plaintiff requests Judgment against Defendants, jointly and severally, in an amount to be proven at trial, damages of in excess of 75,000 to include loss of employment, past, current, and future, loss of advance employment opportunities. inability to be promoted loss of training, loss of investments and poor credit score resulting from missed and late payments due to employment losses, losses for other and further relief as the Court deems proper including pre-judgment and post-judgment interest, attorneys 'fees and costs. Full amount of loss to be determined at trial. Time frame of damages 2013 to current.

Uninvestigated opinions, or believed violations of their code of ethics, have no place in the PADS system I have attached (on page 25) the PADS guideline for (PDI) potentially disqualifying information Exelon's PADS entry of "ADMIN INFO" is asserting to all recipients of the document by this entry that PDI is available however there is not .PDI is not and never was going to be available . Exelon in fact intentionally with its entry caused intentional interference causing a breach of contract utilizing the slander of its opinion. Exelon is entitled to their opinion, however they are NOT legally entitled to transmit their opinion using the PADS system, whereby the PADS entry of ADMIN INFO is not stating to other licensee's an opinion it is in fact stating to other licensee's potentially disqualifying information PDI is available when it was not.

Exelon/Constellations OWN security department determined that Petitioners security access was to be terminated favorably that is the only input into the PADS System allowed per NRC and PADS guidelines the entry of ADMIN is at all times inflicted as subverting the LAW and CFR's that is applicable to this tort and premeditated intentional infliction of harm.

Bill Spahr himself in face to face meetings with petitioner revealed the hostile work environment he had been imposing on the petitioner, by directing pay and bonus decisions, reducing petitioners pay. And directing hours worked, and directing changes of petitioner's responsibilities in addition Bill Spahr felt he was separated from the Exelon code of business conduct and harassment policies. Due to Charity Gotschall's assertions of physical and mental abuse in the marriage.

15

- 10 CFR 26.57 Authorization
- **(b) If potentially disqualifying FFD information is <u>disclosed</u> or discovered, the licensee or other entity <u>may not</u> grant authorization to the individual, except under § 26.69.** This is offered to the court for two points of law.

  The first being that the respondent will assert that they are not preventing me from employment,(See email from Andrew Anderson pg 30) and at all times the prospected employer should resolve the issue upon hiring of the prospective employee (the petitioner in this case) while the very specific code of regulation definitively states no licensee may grant authorization to said inviidual.

  Secondly when Exelon removed the "ADMIN INFO" in 2020 after two years of directed employment interferance to whiich they do not deny. They did not perform the prerequsite 26.189 resolution to the acusation of criminal or improper behavior by the petitioner therfore in fact Constallation is in direct violation of CFR 26.57 above.

## Summery

- With premeditation and intent to interfere with the petitioners continued efforts to find gamefull work in the industry in which he has worked for more than 20 years. The fact that this hate and infliction of harm continues,, proves the effort to harm by Constellation and its officers that without wrong doing by the company and senior leadership would not in any way raise the interest of senior executives nor involve the extensive harms involked by respondants.
- When petitioner contacted Exelon (2018)directly and directed their attention to the harm they where imposing on the the petitioner. Tammara Domeyer, Marri Marchionda- Palmer and Jose Baher defended and asserted and continued addtitonal harms on the petitioner until Oct of that year.
- If petitioner was any other employee, he would never have had his employment terminated for a false accusations.
- If Gotschall was any other employee, he would have never required a determiantion of fitenss. However if a access control reviewer determined a determination of fitness was required a full review would have been completed, with a Medical Review Officer involved (holding a medical, psychological or psychratric other accepted license as required, in FCR 10 26.189. This would have triggered a full investigation of the circumstances requireng the refurral and the hostile work enviroment asociated with the circomstances involing the petioners employment. As the application of this required law would have eliminated the damge to the petioner the option to ignor the

16

applicable law and impart damge with intent to harm was chosen and is still in operation today.

- In addition to eliminating his career, petitioner's former wife thru Exelon and Greg Stopka removed the petitioner's marriage, all his personal belongings. His premarital assets, all of his financial assets and savings accumulated pre-marital and marital. In addition to loss of economic security, he and his children should have been able to look forward to, and use for their own elevated education opportunities.
- If Petitoner was any other employee he would never had "ADMIN INFO" put on his PADS report. If senior leadership was not attempting to hide inappropriate relationships there is absolutly no justification for the hostile implemintation of abject slander, employment interferance and harrassment.
- For Exelon and the named defendants to imply they followed protocol and codes of federal regulation at all times as their defense, is itself ouside the rehlm of possibilities..
- If Petitioner s wife was not in the asserted relationships with depertment directors,mangers and supervisors he would never have been fired slandered this conspericy would not be nesseccary. To summerize, the fact this harm continues is factual evidence of claims oulined in this petition for relief.
- Addiction as difficut enough for a family to deal with, when the addict is allowed to inflict lies and false alligations onto family members and others. And company figures in authority condone, participate in and facilitate the harmfull addiction related behaviors.
- It is not only inapporptiate, but in fact the responsibility of the nuclear licnessee ,to identify and treat or terminate the unescorted access of the person or persons involved in an addicted condition.
- The behavioral observation program in fact requires the direct supevisor to report and sign a certifiaction of the observed behavior monthly. Related to each of their employees, As Ronald Stopka, was participating in the sexual addiction of one of his observed employees, and had knowledge of several of the sexual relationships, including the marriage to the petitioner. Ronald was in fact at all times intentionally falsifying and certiftying required fitness for duty documentation.
- By not reporting petitioners wife and her behaviors accuratly her sexual addiction was hidden to those who could help and or prevent her from hurting others, up to and including the nuclear safety of the plant.
- An addicted person will harm others in effort to protect their addicted behavior, in the same was any a drug or alcohol affected addict would. Causing harm to anyone or anything in their way, in this case it happened to be the petioner.

17

However it could have lead to a more harmfull plant damge or even a radilogical release if she had decided to compel/direct others involved with her sexual escipades to commit sabatoge in effort to stay within her web of decite and sexual exploites.

- Instead an entire major corporation has chosen to participate in her addiction and impart as much harm and blame on her former husband in effort to avoid damge to their careers or relationship with her.
- It should be recignized by the court that this beahivior by the petitioners wife was not new and was recignized at her former employments at Florida Power and Light, Omaha Public Power District, Entergy Corporation (Arkansas Nuclear One) and now Constellation. Petitoner was not aware of this durning the marriage.
- Constallation has in fact investigated and substantiated the claims petitioner has outlined, and continues to lie to requests for evidence, and deny facts and relationships that are easliy proven. Constellation is not willing to turn any of these itmes over for review as they will provide irrefutable evidence of the very discrimantory practices Constllation and its officers are participating in.
- I would be remiss if I did not mention the hostel work enviroment created by managment when they ignor the very evidentsexually charged work enviroment, for those women not willing to participate in sexual advances of a industry with a 90% male work force.

18

- As 10 CFFR 26.39 is

  Is the procedure for which all reviews of fitness for duty (FFD) determinations provides for the impartial review of determinations of the facts, related to any determination and the manner in which the FFD program is violated.

  In fact no review has been conducted and the petitioner has never been allowed to present evidence on his behalf or even allowed to know the current allegations.

  And at no time has an impartial third party review been completed in any of the actions taken against the petitioner.

  A: As the defendant asserts there is a violation of the FFD program documentation, should exist of the infraction. If in fact no evidence exists a validated notarized document stating, no evidence exits be entered into the court file. As this specific request is confined to company records of the petitioner the request should be granted

  B: All Documents Constellation believe that allow the FFD program can be used to consider off duty **"Behavioral observations"** or off premise, off duty observations relate to the FFD duty program. And therefore, compel the requirement of a Determination of Fitness. If in fact no evidence exists a validated notarized document stating, no evidence exits be entered into the court file. As this specific request is confined to records of public purview the request should be granted

  C: Defendants should provide the foundation of information the medical doctor whom made the determination of fitness was provided. And the date time and location of the face-to-face interview (Required by CFR) was conducted. If in fact no evidence exists a validated notarized document stating, no evidence exists to be entered into the court file. As this specific request is confined to company records of the petitioner the request should be granted

- All derogatory information entries into the PADS system are required to be reviewed each month for verifying information as to status of the investigation if in fact as in this case there is no investigation in progress and no criminal charges in the court system the "ADMIN INFO" should be removed immediately.

- At no time has Exelon/Constellation been reviewing the "ADMIN INFO" PADS entry monthly as required by codes of federal regulation to verify the validity.

- Further to the point as I have not been included in the Constellation behavioral observation program since 2018 it is unlawful for them to be including "Observations" into the PADS system at all. As I have worked for another nuclear licensee Constellation's obligation for behavioral observations, ended with my employment with them.

CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information, and belief. I understand that if this certification is not correct, I may be subject to sanctions by the court.

DATED this __7th__ day of February, 2025.

PAUL T. GOTSCHALL, Pro Se

CC: United States Congress / United States Senate/ State of Illinois Congress/ State of Illinois Congress / State of Illinois Senate / Illinois Department of Employment Security / Illinois Office of Nuclear and Radiation Safety / All Nuclear licensees as listed by the Nuclear Regulatory Commission / Environmental Protection Agency / Department of Justice / Department of Labor / Federal Bureau of Investigation / Illinois State Police / EEOC / NLRB

My apologies to the court for the lengthy petition although I have been silenced at every turn in effort of relating the hostile work environment I was subjected to work within, and the continued harm to myself and my family.

304 Gregory
Normal IL 61761
3092872453
Welderv235@Gmail.com

20

| Date Received: 3/23/2020 | **ENERGY NORTHWEST** **REQUEST FOR BACKGROUND INVESTIGATION FILE** |
|---|---|

### REQUESTOR

| Name: Paul Gotschall | | Fax No.: | Telephone No.: 309-287-2453 | Date: 3/19/20 |
|---|---|---|---|---|
| Address: (Street) 106 E. Country Club Dr | | | Return form to: Energy Northwest | |
| City: Phoenix | State: AZ | Zip Code: 85014 | Attention: Access Authorization/MD 964A P.O. Box 968 | |
| Representing: self | | | Richland, WA 99352 | |
| Nature of Request: ☐ Inspect Records    X ☐ Obtain a copy | | | FAX: (509) 377-8111 Phone: (509) 377-8289, 8286 or 8292 | |

Records Request (Be as specific as possible):

☐    Copy of Work History

☐    Copy of Character References

☐    Copy of Credit Report

☐    Copy of Verification of Education or Military Service

X☐    Copy of Entire File and a PADS Synopsis Report

| Paul Gotschall | 3/19/20 |
|---|---|
| Requestor's Signature | Date |

### ENERGY NORTHWEST

| Request Granted: ☑ Yes    ☐ No    ☐ Partial | Page Count: (2) |
|---|---|

Request denied or partial information for the following reasons:




Reviewing Official/Designee:

| Hansen | 3/23/2020 |
|---|---|
| Signature | Date |

04/13

PADS ACCESS SYNOPSIS REPORT

Name: GOTSCHALL, PAUL TIMOTHY                    SSN: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

Date of Birth:   08/18/1964
Does the Individual have Additional Information?  No
Does the Individual have Add. Info. Subs. to Term?  No
Does the Individual have Admin. Data?  *** Yes ***
Is the Individual in a follow-up?  No
Access Active at: No other sites

### SEC1 - ACCESS DATA

| Plant | UA From | UA To | BFA | Add Info | Add Subs Term |
|---|---|---|---|---|---|
| CWEBRS | | | ADM | | |
| CWEBRS | 08/16/2016 | 08/31/2018 | R30 | | |
| IMEDCC | 01/20/2016 | 08/05/2016 | R1Y | | |
| CWEDRS | 10/26/2015 | 11/14/2015 | R30 | | |
| CWEBRS | 09/01/2015 | 10/17/2015 | R1Y | | |
| APLANO | 01/05/2015 | 06/16/2015 | R1Y | | |
| PECPBS | 09/22/2014 | 11/19/2014 | R1Y | | |

### SEC2 - BACKGROUND SCREENING
Completion Date:  01/22/2016
Screening Co:  CSI
Type of Screening:  [R1Y]
   REINSTATE 31 TO 365 DAYS
Reinvestigation Due:   10/23/2019
Input By:   IMEDCC

### SEC3 - PSYCHOLOGICAL TESTING
Completion Date:  03/23/2005
Holding Co:  CWE

Input By:   CWEQAD

### SEC4 - FBI RECORDS CHECK
Date Submitted:  10/21/2014
Date Received:   10/23/2014
Submitted By:   PECPBS
Results:   YES
Input By:   PECPBS

### SEC5 - SELF DISCLOSURE / SUIT. INQ.
Completion Date:  01/06/2016
SD/SI Add Info:    [ ] Yes  [X] No
Sites Responding "Yes":
   QUAD CITIES STATION / EXELON
Input By:   IMEDCC

### SEC6 - CHEMICAL TEST
Collection Date:  01/19/2016
C/V or Utility:  IMP3
Screening Co:  CRL
Holding Co:  IMP3
Reason:   PRE-ACCESS
Input By:   IMEDCC

### TRNS - TRAINING DATA

| Course | Completion | Plant |
|---|---|---|
| PAT | | |
| FFDBOP | 06/14/2018 | CWEBRS |
| RADWKR | | |
| DRSOUT | 01/27/2015 | APLANO |

Verified By _____          3/23/2020
                                                    Date

Generated:     23-Mar-2020 06:51:17
This document contains personal information, protect IAW 10CFR73.56 & NEI 03-01.

PADS ACCESS SYNOPSIS REPORT

Name: GOTSCHALL, PAUL TIMOTHY                                  SSN: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

Date of Birth:   08/18/1964
Does the Individual have Additional Information?  No
Does the Individual have Add. Info. Subs. to Term?  No
Does the Individual have Admin. Data? *** Yes ***
Is the Individual in a follow-up?  No
Access Active at: No other sites

**SEC1 - ACCESS DATA**

| Plant | UA From | UA To | BFA | Add Info | Add Subs Term |
|---|---|---|---|---|---|
| CWEBRS | | | ADM | | |
| CWEBRS | 08/16/2016 | 08/31/2018 | R30 | | |
| IMEDCC | 01/20/2016 | 08/05/2016 | R1Y | | |
| CWEDRS | 10/26/2015 | 11/14/2015 | R30 | | |
| CWEBRS | 09/01/2015 | 10/17/2015 | R1Y | | |
| APLANO | 01/05/2015 | 06/16/2015 | R1Y | | |
| PECPBS | 09/22/2014 | 11/19/2014 | R1Y | | |

**SEC2 - BACKGROUND SCREENING**
Completion Date:  01/22/2016
Screening Co:  CSI
Type of Screening:  [R1Y]
     REINSTATE 31 TO 365 DAYS
Reinvestigation Due:   10/23/2019
Input By:   IMEDCC

**SEC3 - PSYCHOLOGICAL TESTING**
Completion Date:  03/23/2005
Holding Co:  CWE

Input By:   CWEQAD

**SEC4 - FBI RECORDS CHECK**
Date Submitted:  10/21/2014
Date Received:   10/23/2014
Submitted By:   PECPBS
Results:   YES
Input By:   PECPBS

**SEC5 - SELF DISCLOSURE / SUIT. INQ.**
Completion Date:  01/06/2016
SD/SI Add Info:   [ ] Yes  [X] No
Sites Responding "Yes":
QUAD CITIES STATION / EXELON
Input By:   IMEDCC

**SEC6 - CHEMICAL TEST**
Collection Date:  01/19/2016
C/V or Utility:  IMP3
Screening Co:  CRL
Holding Co:  IMP3
Reason:   PRE-ACCESS
Input By:   IMEDCC

**TRNS - TRAINING DATA**

| Course | Completion | Plant |
|---|---|---|
| PAT | | |
| FFDBOP | 06/14/2018 | CWEBRS |
| RADWKR | | |
| DRSOUT | 01/27/2015 | APLANO |

Verified By                                                  3/23/2020
                                                             Date

Generated:    23-Mar-2020 06:51:17
This document contains personal information, protect IAW 10CFR73.56 & NEI 03-01.

23

(NRC) Nuclear Regulatory Commission Policy and Procedure for Preventing and Eliminating Harassing Conduct in the Workplace

**The Definition of Harassing Conduct For purposes of this Policy**, harassing conduct is defined as any unwelcome verbal, -2- visual, physical or other conduct based on race, color, religion, gender (**whether or not** of a sexual nature), national origin, age, disability, sexual orientation or **retaliation** based on opposition to discrimination or participation in the EEO complaint process under either of the following conditions: A. The behavior reasonably can be considered to adversely affect the work environment, or B. An employment decision affecting the employee is based upon the employee's acceptance or rejection of such conduct. Examples of unwelcome prohibited conduct under part A of the definition include but **are not limited to** offensive remarks or comments; ridicule; offensive and derogatory words, phrases, epithets, or jokes; suggestive comments and unwelcome requests for sexual favors; exposure to offensive photographs, explicit drawings, cartoons, e-mails, or internet transmissions; touching; pinching; grabbing; gesturing; or stalking. Examples of unwelcome prohibited conduct under Part B of the definition includes but are not limited to promoting or not promoting an employee; or taking or not taking a personnel action affecting the employee's conditions of employment based on the employee accepting a date or sexual favor.

(NRC) Nuclear Regulatory Commission Policy and Procedure for Preventing and Eliminating Harassing Conduct in the Workplace

**The Definition of Harassing Conduct For purposes of this Policy**, harassing conduct is defined as any unwelcome verbal, -2- visual, physical or other conduct based on race, color, religion, gender (**whether or not** of a sexual nature), national origin, age, disability, sexual orientation or **retaliation** based on opposition to discrimination or participation in the EEO complaint process under either of the following conditions: A. The behavior reasonably can be considered to adversely affect the work environment, or B. An employment decision affecting the employee is based upon the employee's acceptance or rejection of such conduct. Examples of unwelcome prohibited conduct under part A of the definition include but **are not limited to** offensive remarks or comments; ridicule; offensive and derogatory words, phrases, epithets, or jokes; suggestive comments and unwelcome requests for sexual favors; exposure to offensive photographs, explicit drawings, cartoons, e-mails, or internet transmissions; touching; pinching; grabbing; gesturing; or stalking. Examples of unwelcome prohibited conduct under Part B of the definition includes but are not limited to promoting or not promoting an employee; or taking or not taking a personnel action affecting the employee's conditions of employment based on the employee accepting a date or sexual favor.

(the 10 CFR Part 26 acronym equivalent is **PDFFDI, Potentially Disqualifying Fitnessfor-Duty** Information) and includes information demonstrating that an individual has—

1. Violated a licensee's or approved C/V's FFD policy;

2. Had authorization denied or terminated <u>unfavorably</u> from or made ineligible for UA to any nuclear facility, Technical Support Center (TSC) or Emergency Operations Facility (EOF) for a violation of a fitness-for-duty program, falsification of employment or self-disclosure statement, the sale, use or possession of illegal drugs or the consumption of alcohol within a protected area of a nuclear power plant;

3. Used, sold, or possessed illegal drugs;

4. Abused legal drugs or alcohol;

5. Subverted or attempted to subvert a drug or alcohol testing program;

6. Refused to take a drug or alcohol test;

7. Been subjected to a plan for substance abuse treatment (except for self-referral); or

8. Had legal action or employment action taken for alcohol or drug use.

# U.S. Department of Labor Policy Statement on Harassing Conduct in the Workplace

U.S. Department of Labor Policy Statement
On Harassing Conduct in the Workplace

Martin J. Walsh, Secretary of Labor

The U.S. Department of Labor (DOL or Department) must strive to be a model workplace wherein public servants, drawn from the full diversity of the Nation, are cultivated to their highest potential and treated equitably with respect. We must recognize that the Department achieves its mission most effectively when all employees, including those from historically underserved communities, such as Black, Latino, American Indian and Alaska Native, Asian Americans, Native Hawaiians, and Pacific Islanders, other persons of color, women, members of religious minorities, and individuals who are disabled or LGBTQI+, are encouraged in their performance through inclusion and development. One way we can do this is to build and maintain a workplace in which we uphold policies and practices to prevent, report, investigate and appropriately resolve allegations of harassing conduct. To create a workplace culture that acknowledges the harm of harassing conduct and promotes accountability when acting to resolve harassment or other forms of discrimination or retaliation, we must engage with intention and promote mechanisms to report misconduct. Furthermore, DOL does not condone retaliation against any employee making a good-faith report of harassing conduct, including witnesses or bystanders, and will address training and education needs of managers, supervisors, and employees in recognizing conduct that may be in violation of the Department's policy.

The Department has recently finalized the revised comprehensive anti-harassment program in Department of Labor Management Series (DLMS) 6 – Chapter 300, Policy & Procedures for Preventing & Eliminating Harassing Conduct in the Workplace (Policy & Procedures). The Policy & Procedures broaden the scope of prohibited conduct in order to promptly address and mitigate discriminatory and biased behavior before it rises to the level of unlawful harassment. The Department strives to prevent and eliminate harassing conduct at the earliest possible stage before it becomes "severe or pervasive," *i.e.*, before the conduct violates the law.

The Department defines harassing conduct as any unwelcome verbal, written, or physical conduct that is based on race (including dress and grooming), color, ancestry, national origin (including ethnicity, accent, and use of a language other than English),

26

religion or religious creed (including reasonable accommodation of religious beliefs or practices), physical or mental disability (including reasonable accommodation of physical or mental disability), genetic information, sex (including pregnancy, childbirth, lactation, abortion, and related medical conditions and procedures), sexual orientation, gender identity, gender expression, intersex conditions, age, parental status, marital status, political affiliation or any other prohibited factor, and/or retaliation for engaging in protected Equal Employment Opportunity (EEO) activity (e.g., filing or participating in a complaint or otherwise opposing discrimination, including harassment; requesting a reasonable accommodation). Harassment includes behavior that can reasonably be considered to adversely affect the work environment (that is, potentially giving rise to a "hostile work environment"). Harassment also includes "quid pro quo harassment," conduct that generally results in a tangible employment decision based upon acceptance or rejection of advances or requests for sexual or other favors. The Policy & Procedures provide examples of

prohibited behaviors, including but not limited to the use of microaggressions or the everyday, subtle, intentional or unintentional interactions that may be offensive, demeaning, or biased towards members of historically disenfranchised communities.

The Department also prohibits retaliation against any employee for making a good-faith report of harassing conduct, cooperating with or participating in any investigation of alleged harassing conduct, or otherwise engaging in protected activity. Aggrieved individuals or alleged victims— and any witnesses participating in this process—should feel assured that the Department will act with sensitivity and uphold confidentiality to the greatest extent possible.

The Department is committed to taking prompt and effective action against harassing conduct if the Department is appropriately notified of this behavior. The Department prohibits harassing conduct at every level in the organization, including when the conduct is committed by administrators, supervisors, managers, co-workers, contractors, clients, or customers, and could offend an employee even if they are not the intended target. The Department prohibits harassing conduct in a variety of contexts, including off-site or off-duty, during official travel or at a work event, or even using social media.

Employees or contract employees engaged in DOL workspaces who believe that they have been directly or indirectly subjected to or have witnessed any harassing conduct should promptly report the matter to a person in their supervisory chain and/or to their agency Workplace Equality Compliance Office (WECO), or, for regional office employees, the Regional Administrator of the Office of the Assistant Secretary for Administration and Management (OASAM) in the region where the conduct took place. Any applicants for employment with the Department who believe that they have been subjected to harassing conduct during the application process should report the

27

incident to the WECO for OASAM. The Department's harassment policy applies equally to employees, applicants for employment, and DOL contract employees.

Supervisors and managers who observe or are informed of allegations of harassing conduct must act promptly and appropriately to address and mitigate harassing behavior. The Department will take appropriate corrective action against a supervisor or management official who fails to report allegations of harassing conduct or perform their obligations as set forth in the Policy & Procedures. To the extent permitted by law, the Department will also take appropriate corrective action against individuals who engage in harassing conduct, which may include training or counseling, or disciplinary action up to and including removal, depending on the circumstances of the harassment. In certain circumstances, the Department will determine whether to provide interim relief to employees who have been subjected to alleged harassing conduct while an inquiry is pending to ensure that further misconduct does not occur.

Filing a harassing conduct complaint does not replace an employee's EEO or other rights, including the right to file a negotiated or administrative grievance. Employees are not precluded from filing EEO complaints (or negotiated or administrative grievances) concerning allegations of harassment while also filing a harassing conduct complaint with their agency's WECO. Reporting harassing conduct under the Policy & Procedures described above does not constitute filing an EEO complaint with the Civil Rights Center and does not pause the timeframe for timely filing an EEO complaint.

As the Secretary of Labor, I am committed to creating an environment that encourages and supports all Department personnel, including management, staff at all levels, non-career appointees, and contract employees, to report when they experience, are witness to, or are made aware of alleged discriminatory, biased, or harassing conduct. When we work collectively towards empowering our employees, the Department benefits. We will succeed in our efforts to eliminate harassment if we promote awareness, steadfastly commit to the principles of diversity, equity, inclusion, and accessibility, and take swift action to hold accountable those who engage in harassing behavior contrary to these articulated standards that improve our ability to serve the American public.

MARTIN J. WALSH
Secretary of Labor

Last Updated: September 22, 2022

28

**Excellence of work at Braidwood in two short years**

Identified the cause and resolution, of a EPRI Welding issue on a valve bonnet during a scheduled outage, when the Braidwood engineering, construction or the welding administrator did not resolve issue. Issue, if not resolved it could have extended the outage.

Resolved and averted an unscheduled plant shutdown by being able to identify plan and schedule the activities required to repair a damaged control room HVAC compressor utilizing crosscutting trade knowledge in refrigeration/ Welding /planning and materials.                  LCO

Through outside reading of older nuclear industry publications, I identified better uses and implementations of the maintenance budget.  Better use of contactors for routine maintenance activities during scheduled outages. And utilizing inhouse maintenance on more important tasks for which they are better trained and equipped to perform. Resulting in substantial labor cost savings of the yearly budget for the department.

Provided guidance to correct a corrective action response, of a welding activity to repair a steam line welding issue had been an outage project. The original welding schedule activity to perform a in progress Xray had been removed from the schedule. This welding caused lengthy delays of the project had cost the company several hundred thousand dollars and extended an outage. Therefore, it was important to correctly capture the causes of the welding activity and correct the errors prior to future welding projects.

I also identified that the written work instructions for scheduled maintenance and repairs at Braidwood were subpar, and directed the development of a work package preparation program that will support more efficient scheduled and unscheduled maintenance activities in the future.

I completed the Exelon Initial Engineering Program as scheduled with a 90% composite score

I identified that the purchase and utilization of a computer controlled (CNC) milling machine that has saved time, and millions of dollars of parts procurement and storage of essential nuclear components that ensure the operation and availability of the plant.

I identified that the installation of scroll design air compressors would resolve a long-standing plant air system shortfall. Bringing the pressurized air system back to expected standards of volume and pressure required to operate the plant.. In addition, I responded to directed corporate questions, of robust construction and reliability of the scroll compressor design, to meet their satisfaction.                  LCO

I also organized and supervised mechanical maintenance and engineering, the first ever plant inspection with ZERO identified piping leaks at Braidwood NPP.

**From:** Anderson, Andrew S: (Constellation Nuclear) <Andrew.Anderson@constellation.com>
**Sent:** Thursday, September 5, 2024 10:11:28 AM
**To:** Paul Gotschall <pacificstatesmechanical@outlook.com>; Behar, Jose J: (Constellation) <Jose.Behar@constellation.com>
**Subject:** Re: [EXTERNAL]Employment Interference

Sir,

We, Constellation, did respond to Columbia on September 4th.

Columbia will now make a decision of whether to grant or deny under their process and procedures. Again, this is completely independent of Constellation so please work with Columbia directly with any further questions.

Thank you,

**Get** Outlook for iOS

30

FILED

E-FILED
Friday, 07 February, 2025 03:39:33 PM
Clerk, U.S. District Court, ILCD

FEB - 7 2025

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF ILLINOIS

Now Comes

**PAUL T. GOTSCHALL,**

Plaintiff, Petitioner

vs.

Defendants.

**EXELON/CONTELATION GENERATION COMPANY, L.L.C.,** Nuclear licensee,

**MARRI MARCHIONDA-PALMER** and JOHN DOE PALMER,

**DOMINION ENERGY** Nuclear power Licensee

**Energy Northwest** nuclear power Licensee

## VERIFIED ORDER TO CEASE AND DESIST

CASE NO.: 25-1054

PLAINTIFF'S VERIFIED COMPLAINT

It is ordered that Constellation Generation Company and all subsidiaries shall immediately cease and desist transmission of "ADMIN INFO" or other interference of employment statements. On the personal access data system report of Paul Gotschall. To any and all nuclear licensees or other potential employers that make inquiry. This order applies to all Constellation officers, employees and council. Constellation shall Discontinue the use any discriminatory use of the Personnel Access Data System Known as "PADS" for other than required security entries towards former employee Paul Gotschall.

_____

Federal Judge     Central District of Illinois